UNITED STATES DISTRICT COURT FOR
The EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA
— Plaintiff

• FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  OCT 23 2020  ★

LONG ISLAND OFFICE

V.

Case NO: 2:13-CR-00207-JFB
—AKT

BRIAN JONES, pro se
— Defendant

# EMERGENCY MOTION FOR REDUCTION OF SENTENCE PURSUANT TO TITLE 18 U.S.C. § 3582 (c) 1 (A)(i)

BRIAN JONES, pro se, comes before this honorable court requesting an expidited order granting his immediate release for "Extraordinary and compelling reasons" based on the ongoing COVID-19 pandemic, his personal medical conditions and the dangers of these factors when combined with FCI Danbury's deplorable response and management of COVID-19 in the prison.

The United States Supreme Court in Haines V. Kerner has held that an inmate's pro se filing should be considered in the most liberal of ways. Jones asks this court to provide him such considerations.

Request for appointment of Counsel

Jones, requests that this court appoint him legal counsel for this motion and its subsequent proceedings. Jones is not trained in the court/trial aspect of the law and legal process. The administration and procedures at FCI Danbury is significantly limiting inmate's access to legal research, case law, and the ability to copy documents that will support this filing. The administration is refusing to allow inmates access to photocopiers, typewriters or printers that are needed to properly prepare court documents and supporting evidence. The only way for Jones to be fairly represented in this complex legal matter, which directly affects his life and liberty is through the appointment of legal counsel.

# AUTHORITY

## A. Compassionate Release.

The First Step Act (FSA) of 2018 amended the procedural requirements for a motion to reduce an inmate's sentence and provide for compassionate release pursuant to Title 18 U.S.C § 3582(c)(1)(a).

"Extraordinary and compelling reasons warrant such a reduction, and that such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission" (U.S.S.C); Title 18 U.S.C 3582 (c)(1)(a), "In light of this amendment a defendant may move for compassionate release after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a on the defendant's behalf, or a lapse of 30 days from receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). "Previously only the BOP could move for compassionate release and such motions were rarely filed." See United States V. Riverwider, No. 3:10-CR-222(RNC), 2020 WL 597393 at *2 (D.CONN Feb. 7, 2020), The amendment expanded access to the court, but did not alter the substantive standard, see IBId, Also see United States v. Ebbers No. S402-CR-11443(VEC) 2020, WL 91399 at *4 (S.D.N.Y. Jan. 8, 2020).

On April 8, 2020 JONES filed an "electronic copout" to Warden Easter requesting compassionate release. On April 9, 2020 Warden Easter refused

to honor the request and directed Jones to submit a request to an UNIDENTIFIED staff member with the title of Reduction In Sentence Coordinator (RIS)

On April 9, 2020 Jones' attorney for his resentencing hearing on this same case, submitted a letter to Jones' case manager Mr. Niewinski requesting Jones be considered for release to home confinement pursuant to the CARES ACT, and directives issued by Attorney General (AG) Barr's March 26, and April 3 directive memos to wardens at 3 separate BOP facilities including FCI Danbury. To this date no response has been received from the BOP at FCI Danbury

On August 5, 2020 Jones again applies for Home confinement/compassionate release to Warden Easter. On September 4, 2020 Jones received a letter in the prison mail system stating that he was denied both home confinement and compassionate release, though no reason for denial was given. As such Jones has satisfied the need to exhaust Administrative remedies in fulfillment of the FSA of 2018, and this court has Authorization and jurisdiction to hear Jones' motion for compassionate release.

## B. Extraordinary and Compelling Reasons

To be considered for a sentence reduction to Compassionate release Jones must establish "Extraordinary and compelling reasons' to warrant such a reduction, 18 U.S.C § 3582(c)(1)(A). By Statute such reduction must be consistent with applicable policy statements issued by the U.S.S.C. Then before compassionate release can be granted, the court must consider the factors set forth in 18 U.S.C § 3553.

Traditionally, the court's usage of §3582 was limited/controlled by Commentary note 1B1.13 and Application Note 1(D). Due to a recent case in the Second Circuit Court of Appeals this limiting Article has been eliminated. The Appeals court is quoted as stating. "A sentence reduction brought about not upon motion by the director of the Bureau of Prisons' is not a reduction' under this policy statement". In other words if a compassionate release motion is not brought by the BOP Director, Guideline 1B1.13 does not by its own terms, Apply to it. Because Guideline 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note

1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." U.S. v. Zullo, No: 19-3218-CR (2d Cir. Sept 25, 2020). Zullo further states "When the BOP fails to act, Congress made the courts the decision maker as to compassionate release" Id *11, The Zullo court then states "Because Application Note 1(D) does not bind district courts, they are similarly not bound by BOP's updated guidance on what counts as an extraordinary and compelling reason... The government has not identified, and we have not found, any statute, Guideline, or other document beyond Application Note 1(D) that would require courts to defer to the BOP on this question" id 14 In other words after Zullo the district court's have complete discretion to establish extraordinary and compelling reasons without being limited by Application Note 1(D), Commentary Note 1B/.13 or BOP Guidelines while determining whether to grant compassionate release.

   Even if this court were to discount the Zullo Court's decision, The combination of the COVID-19 crisis, Conditions in FCI Danbury, Jones' medical conditions/coc risk factors, and his extraordinary

rehabilitative efforts clearly meets the threshold for extraordinary and compelling reasons for compassionate release under the category of "other extraordinary and compelling reasons.

## Disscussion:

### 1. Covid-19 Crisis and FCI Danbury

While the Court is obviously aware of the extent and impact of COVID-19 in general society, it becomes less clear to understand the extent and impact of COVID-19 in prisons. In many instances prisons report low numbers or even zero cases of COVID-19. Courts have stated; "The courts concern for segars' safety is not disuaded by the fact that FCI Morgantown has No reported cases of COVID-19. The prison's report of Zero confirmed cases is more likely a result of a lack of testing than a lack of the virus' presence in the prison." Segars v U.S. NO-16-CR-20222, WL 3172734 *3(E.D. Mich, June 15, 2020). Another Court states "there is good reason to beleive that the numbers reported by the BOP understate

the actual numbers of tested positive cases"
U.S. V. Santiago, No.: 10-CR-555, 2020 WL 3121146,
at *4 (S.D.N.Y). In May on or about the 12th the BOP
at FCI Danbury conducted in mass testing. Since
that time they have only tested newly arriving
inmates and severely symptomatic inmates.
On every transport in of new inmates there
have been on average 2 COVID positive inmates
in the van or bus. These inmates have been exposed
to multiple staff members who are not isolated
and then go and interact with inmates in
general population and other staff. Leaving
a substantial risk of transmission of the virus.
The courts and the medical community have
both commented on testing solely self reporting
inmates "that testing inside prisons has been scant
except for people who self report symptoms which
means that statistics about the number of infections
already in BOP facilities is largely meaningless"
U.S. V Sparza, NO 07-CR-294, 2020 WL 1696084
at *2 (D. Idaho April 7, 2020). Leonard Rubenstein
a professor at The Johns Hopkins Bloomberg School
of Public Health is quoted as saying "unless you do
universal testing in all environments, the risk

of spread is enormous, If you are waiting for symptoms to emerge before you do the testing you are getting a false picture of what is really going on ... It's too late." U.S. v Salvagno, U.S. Dist. lexis 109879, 5:02-CR-51 (LEK)(N.D. NY June 22, 2020) citing U.S. v Pabon, U.S. Dist lexis 78245 WL 2112265, 17-CR-165 at *5 (E.D. P.A. May 4, 2020) This paints a picture of limited uneffective use of COVID-19 testing. FCI Danbury continues to report a low infection rate. This is to be expected because they are testing very few inmates at FCI Danbury. In the event that an inmate In a housing unit (conditions in housing units described in detail below) does test positive, other inmates in that same unit are not also tested. This practice goes beyond deliberate indifference it actually extends to blatantly negligent.

The physical conditions at FCI Danbury do not pain a much better picture. "The Warden [at FCI Danbury] does not dispute the impossibility of institute effective social distancing measures in facilities like FCI Danbury, where the vast majority of the population lives and sleeps in large dormitory halls lined with bunk beds sharing

— 9 —

bathroom and shower facilities." Martinez-Brooks v. Easter, 3:20-CV-0055(MPS) (D.Conn May 12, 2020) At the time the warden made this statement each "Open Dorm" was attached to 2, 10 man 'Bus stop' rooms. This allowed for a small amount of seperation between inmates, now Warden Easter has closed all 14 Ten man bus stop rooms in the facility into total eliminating 140 beds while not reducing the population a similar amount. The result has been a packing of inmates in Jones' dormitory. His dorm holds a maximum of 80 people, it is now filled to a total of 22 inmates. The Bunk beds are less than 5½ feet apart, there is no partition to prevent cough residue or spittle from being transfered from inmate to inmate. This decision has made social distancing even more difficult. Prior to this dangerous decision the Martinez court found "While the warden is free to exercise discretion in choosing among equally effective measures to protect inmates from serious, risks choosing inevitably inadequate measures to the exclusion of plainly superior one constitutes deliberate indifference." Martinez @ 49. Decisions such as over crowding of living areas goes beyond

deliberate indifference and begins to approach flat out malicious negligence. The Salvagno court states. "Given the court's factual findings in that case, it appears that this court actually understated the severity of conditions at FCI Danbury" This statement was made after reviewing the court's finding in U.S. v. Hillow, NO.: 15-CR-179 2020 WL 2851086, at *4 (D.N.H June 2, 2020) (The risk of contagion at FCI Danbury is well documented and is also confirmed by [defendants] observations.) Specifically the Hillow court credited the inmate's assertions that she was "tightly housed with other inmates" and that inmates who had exhibited symptoms of COVID-19 had been returned to her communal area in the facility" Martinez-Brooks at *32-34. To clarify Hillow was incarcerated at FSL Danbury which is comprised of a single large communal dormitory. The circumstances are fundamentally the same as those encountered by Jones in the men's FCI.

While FCF Danbury claims to perform daily screening of inmates for COVID-19 symptoms this two is a false. Officers walk through the housing unit using a infared thermometer to take inmates temperatures. In many

this device is not used properly showing body temperatures below 96°F. A body temperature that low is clinically dead. Several times in the past weeks Jones has observed. Inmates having temperatures over 100°F. By policy these inmates should have been isolated and brought to the medical department. Instead the testing officer moved the thermometer a greater distance from the inmate's head and repeated the test until he/she got a normal result. The institution is supposed to be documenting each inmates temperature every day. Rather than following this policy several days a week officers will basically run through the unit and take temperatures with rediculous results and then falsify the results in the comfort of their offices. This goes to futher exemplify the culture of deliberate indifference by staff toward inmate's health. Inmates have submitted 'sick call' slips with complaints like "Fever", "Muscle Aches", and "Fatigue" and were never evaluated by the medical department. Again BOP policy would require the inmate to be isolated. Yet it was not done, another sign of the deliberate indifference shown by staff at FCI-Danbury.

As a side note just today October 13, 2020 4

inmate from the "Airlist" arrived at the institution testing positive for COVID-19. This inmate likely interacted with over a dozen staff members prior to being isolated. NoN of these staff members have been placed in isolation and they are now interacting with the general population including medically vulnerable inmates.

## Jones' Medical History

Jones has a medical history for Hypertension (High blood pressure), Obesity, Tortuous of the Aorta, and a radiodensity of Right upper Lung.

According to the CDC Hypertension (treated or not) presents one of the most common risk factors for serious health consequences from contraction of Covid-19. See Groups at Higher Risk For Severe Illness, Centers For Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-NCOV/need-extra-precautions/groups-at-higher-risk.html. (Last visited Oct 1, 2020). Jones is currently prescribed Carvidolol which is a angiotensin-converting enzyme (ACE) inhibitor, while there is some controversy many NIH, CDC, and WHO sponsered studies indicate taking these medications may further increase

the risks of serious health consequences. See Interim Clinical Guidance for Management of Patients with Coronavirus Disease (COVID-19), Centers For Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html.

"as it has been hypothesized that the medication he takes for hypertension increases his likelyhood of infection in the first place, even while his hypertension enhances the likelyhood of serious illiness resulting from infection. U.S. v. Salvagno, 5:02-CR-00051 (LEK) (N.D.N.Y. 04/23/20) "the fact that [the defendant] takes lisinopril (a different ACE Inhibitor, but similar to Carvidolol), an ACE inhibitor, to treat his hypertension places him at higher risk for severe COVID-19 infection" (clarification added) U.S. v. Roman, 2020 WL 1908665, at *2 (S.D.N.Y Mar. 27, 2020) (quoting Lei Fang Et.al., Are Patients with Hypertension and Diabetes Mellitus at Increased Risk FOR COVID-19 Infection?, Lancet (Mar 11, 2020), at 1, https//www.thelancet.com/action/show pdf? pii=52213-2600%2820%2930116-8).

"Several courts In this Circuit have found that the combination of a personal COVID-19

factor and an especially high-risk prison atmosphere can support a finding that there is an "extraordinary and compelling" reason as defined in this provision of the sentencing guidelines" Salvagno, 5:02-CR-00051 (LEK) at *11, Also see U.S. V. Colvin, No. 08-CR-287, 2020 WL 1815851 at *2 (D.Conn. Apr 2, 2020), U.S. v. Zukerman, No 16-CR-194, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020), U.S. v. Sawicz, No. 08-CR-287, 2020 WL 1815851, at *2 (E.D. N.Y. April 10, 2020), In each of these cases the court Recognized the presence of Hypertension with atleast one other co-morbity factor, in combination with the impossibility to social distance in prison constitutes ExtraOrdinary and Compelling reasons to grant compassionate release.

Jones has a Body Mass Index of approximately 33, which places him in the catagory of being obese. the CDC has "recently lowered the threshold for obesity as a co-morbidity factor to a BMI of 25 or over," In one report published last month, researchers found that people with obesity who caught corona-virus were more than twice as likely to end up in the hospital and nearly 50 percent more likely to die

of COVID-19. "The Puzzle of Obesity and COVID-19" New York times, September 29, 2020 "One of fat's most potent effects appears to involve quelling the body's initial immune response to the virus, allowing the pathogen to spread unchecked" ID. Simply put obesity allows the virus to take a foothold before the body even has a chance to fight. This places Obesity not only in its own co-morbidity catagory, It also belongs as a qualifier for the Immuno-comprimised co-morbidity factor.

While it is not directly listed as a co-morbidity factor tortuous Aorta falls solidly into the catagory of Vascular disease and clotting disorder. Simply put this condition causes a constriction in the Aorta which is the primary Artery taking oxygenated blood from the heart to the rest of the body. This constriction greatly increases the possibility of Jones contracting blood clots This further complicates the effects of COVID-19 as it has been linked to the formation of blood clots in infected Patients.

These factors on there own place Jones at a higher risk of catastrophic health conseyvenses if Jones were to contract COVID-19 in prison. together the create an environment of multiple risk factors

that could spell a disaster if Jones were to contract COVID-19 in prison. This risk is exponentially increased by FCI Danbury's physical structure making social distancing impossible, The deliberate indifference shown by Administrative, operation and medical staff.

## §3553 Factors And 3142(g) factors

The Court "must consider the sentencing factors set forth in Section 3553 (a) to the extent that they are applicable" § 3582 (c)(i)(A). Under § 3553 (a), the Court must consider what is "sufficient but not greater than necessary to comply with the purposes of sentencing." § 3553 (a). potentially relevant factors include:

1. The nature and circumstances of the offense and the history and characteristics of the defendant, See 3553 (a)(1);

2. The need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just

-17-

punishment for the defendant's crimes, see § 3553(a)(2)(A)

3. The need for the sentence to afford adequate deterrence to comparable criminal conduct. see 3553(a)(2)(B)

4. The need for the sentence to protect the public from further crimes by the defendant see 3553(a)(2)(c); and

5. The need to avoid unwanted sentence disparities among similarly situated defendants see 3553(a)(6)

While the sentencing court issued a fair sentence to Jones it is clear the Court did not intend for the sentence to include a "great and unforeseen risk of severe illness or death. brought on by a global pandemic." Zukerman, 2020 WL 1659880, at *6,

It is clear that Jones has developed a respect for Authority and the law. This is evidenced by his incident free incarceration, he maintains employment which benefits the institutional operation by working in the prison commissary. He has a substantial support network of friends, family, and a religious community that will hold him accountable and act as an additional

barrier to him commiting new crimes.

While section 994(T) of the sentencing guidelines state that a "defendant's rehabilitative effort in itself does not constitute extraordinary and compelling reasons." This applies in Jones case to the extent that extraordinary and compelling reasons have already been established, Jone's rehabilitation is not being consider "in itself", but rather as a factor to be considered in evaluating not only his rehabilitation, but also his risk of recidivism and his threat to society. "As the supreme court has emphasized 'evidence of post sentencing rehabilitation may be highly relevant to several of the 3553(a) factors that congress has expressly instructed district courts to consider at Sentencing" U.S. v. Phillips, 2020 U.S. Dist. Lexis 117108, 94-CR-631(SHS) (S.D.N.Y. June 30, 2020) citing Pepper v. U.S., 562 U.S. 476, 491, 131 S.CT 1229, 179 L.Ed 2d 196 (2011). Jone's prison record shows he has taken a litany of programs that focused first on changing himself and his faulty thought processes to include: Criminal thinking, Basic Cognitive Skills, Emotional Self Regulation, Traumatic Stress + Resilience workshop, The Resolve PTSD treatment program (ongoing), he took a

Victim Impact Panel program to better understand how all of the victims of his crime and lifestyle were effected by his actions. He has additionally taken Programs such as Parenting, prison to paycheck, accounting, real estate, CDL and others to better prepare him to re-enter society. Due to COVID-19 restrictions at FCI Danbury there have not been any classes available to take since march 15, 2020. The BOP has assigned Jones a PATTERN recidivism risk assessment score of a low which has not been updated since prior to his resentencing. With the removal of the violent offense he is likely classified as a minimal risk to return to prison. He has communicated several times with his case manager to get a copy of his PATTERN score work sheet to no avail. He has also placed several requests to have it updated without success

3142(g) Factors

The factors listed in 3142(g) are "largely duplicative of those in 3553(a)" Sawicz, 2020 WL 1815851 at *3. Jones has established

that while he has made his mistakes he is a man of good character, with strong family and community ties. He has taken drug treatment in prison to address his addictions, Further, he intends to continue that treatment upon release. He has the support of a strong religious community. He clearly does not pose a threat to anyone or the community if released. U.S. V Asaro, No. 17-CR-127, 2020 WL 1899221 at *8 (E.D. N.Y. April 17, 2020) "At sentencing, I intended to impose an above-guideline sentence-not a death sentence .. I do not believe that continued detention in light of this risk [of serious illness or death from COVID-19], is an appropriate or proportionate way to further the purpose of sentencing" It is clear that this Court did not intend for Jones to receive a death sentence or be placed at the risks presented by COVID-19 and his comorbidity factors. As such Jones has met all requirements set forth in 3553(a) and 3142(g).

Re-entry Plan

I have a confirmed release address of

17 Roosevelt St. Hempstead, NY 11550, where he will live with his mother and sister. Within the home he will have a private bed room and Bathroom. This will allow him to social distant as needed. He is classified as chronically disabled and will receive a disability payment that is sufficient to sustain himself. He has an employment offer doing clerical work at True Indeed Realty to supplement his disability income. He intends to seek ongoing Drug and Alcohol addiction conselling. I have health insurance arranged. My family has assured me that they will assist me with transportation as needed.

## Conclusion

Jones has exceeded the threshold to establish extraordinary and compelling reasons for consideration for compassionate release. he clearly meets multiple criteria as co-morbidity factors related to COVID-19, and due to these factors is at a significantly greater risk for "catastrophic health consequences". He has shown the court that the goals of

-22-

§ 3553 have been met. He additionally shows he is no threat/danger to society pursuant to §3142(G). Considering these factors compassionate release would satisfy §3553(a) direction of "impose a sentence sufficient, but not greater than necessary to comply with the ... the need for the sentence imposed." There is little reason to believe that requiring him serve the remaining portion of his sentence incarcerated would further the goals set forth in 3553(a). If this court is concerned with the need to supervise Jones he is willing to agree to have the time he is granted to be added to his supervised release. As such this court should grant him compassionate release.

Respectfully Submitted this 20th day of October, 2020,

Brian Jones
BRIAN JONES
BOP# 82112-053
Federal Correctional Institution
33½ Pembroke RD
Danbury, CT 06811

Federal Correctional Institution
33 1/2 Pem
Danbury
Brian Jones #82112-053

FEDERAL CORRECTIONAL INSTITUTION DANBURY
33 1/2 PEMBROKE ROAD, DANBURY CT, 06811
DATE 10/8 /10
THE ENCLOSED LETTER WAS PROCESSED THROUGH
SPECIAL MAIL PROCEDURES FOR FORWARDING TO YOU.
THE LETTER HAS BEEN NEITHER OPENED NOR INSPECTED.
IF THE WRITER RAISES A QUESTION OR PROBLEM OVER
WHICH THIS FACILITY HAS JURISDICTION, YOU
MAY WISH TO RETURN THE MATERIAL FOR FURTHER
INFORMATION OR CLARIFICATION. IF THE WRITER
ENCLOSES CORRESPONDENCE FOR FORWARDING
TO ANOTHER ADDRESSEE, PLEASE RETURN
THE ENCLOSURES TO THE ABOVE ADDRESS.

"LEGAL MAIL"

CLERK OF U.S. DISTRICT COURT, EDNY
100 FEDERAL PLAZA
P.O. BOX 9014
CENTRAL ISLIP, NY 11722-9014

U S M S

RECEIVED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 23 2020 ★

LONG ISLAND OFFICE

White Plains, NY 10610
WED OCT 21 2020 PM

FOREVER, USA FOREVER

